*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CORA LADANE LYMON,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2026
11:19 AM

No. 374440
Wayne Circuit Court
LC No. 14-010811-01-FC

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Cora Lymon, (hereinafter defendant) appeals as of right from the amended judgment of sentence, which reflects the removal of the requirement that he register under Michigan's Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, in accordance with this Court's prior ruling in *People v Lymon*, 342 Mich App 46, 88-89; 993 NW2d 24 (2022), aff'd in part, vacated in part 515 Mich 145; 29 NW3d 58 (2024).

Defendant was convicted by a jury of three counts of torture, MCL 750.85; three counts of unlawful imprisonment, MCL 750.349b; one count of felonious assault, MCL 750.82; and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In his initial appeal, defendant argued that insufficient evidence supported his torture convictions and that it was error to require him to register under SORA because his unlawful imprisonment convictions did not involve a sex-related offense. This Court affirmed defendant's convictions but remanded for removal of his SORA registration. *Lymon*, 342 Mich App at 88-89. Specifically, this Court stated:

> Consequently, having considered the gravity of the offense, the harshness of the penalty, and the goal of rehabilitation, we conclude that requiring Lymon to register as a sex offender for 15 years is cruel or unusual punishment because it is

-1-

unjustifiably disproportionate to the offense committed. On remand, the trial court shall enter an order removing Lymon from the sex offender registry. [*Id.*][1]

Defendant now appeals from the amended judgment of sentence, which removed him from the SORA, MCL 28.721 et seq. Importantly, the amended judgment left all of defendant's remaining sentences unchanged. On appeal, defendant raises three primary arguments: (1) he asserts that he is entitled to resentencing on the grounds that his original sentences were predicated on inaccurate information or constituted a misconception of law; (2) he contends that resentencing is also justified as an equitable remedy in light of his demonstrated rehabilitation; and (3) he claims entitlement to jail credit for the days he spent under house arrest and on electronic tether while released on appellate bond.

## I. BACKGROUND

The factual and procedural background underlying this matter is thoroughly set forth by our Supreme Court in *People v Lymon*, 515 Mich 153, 154-158 (2023). For purposes of this appeal, it suffices to state that defendant, during the course of a domestic altercation with his then-wife, forcibly confined his family—including minor children—at gunpoint overnight. See *Id.* at 154-157. As a consequence of these actions, defendant was convicted of three counts of unlawful imprisonment under MCL 750.349b. Because two of those convictions involved minor victims, the trial court ordered defendant to register as a Tier I sex offender pursuant to the SORA, specifically MCL 28.722(q) and (r)(*iii*). See *Lymon*, 515 Mich at 157. Defendant subsequently appealed his convictions and sentence. He was released on bond pending appeal in November 2020. After our Supreme Court affirmed this Courts' decision regarding the applicability of SORA to defendant, defendant filed a motion in the trial court seeking correction of what he contended were invalid sentences and requested resentencing. The trial court granted the motion only in part, entering an order removing defendant from SORA registration but declining to alter what it characterized as an otherwise valid sentence. Defendant was thereafter remanded to the Michigan Department of Corrections to complete his sentences. This appeal ensued.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

Questions of constitutional law are reviewed de novo, meaning the issues are reviewed independently with no deference to the trial court. *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019), citing *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). "This Court reviews sentencing issues for an abuse of discretion." *People v Moore*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371556); slip op at 2. "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *Id.*, quoting

---

[1] Our Supreme Court affirmed this Court's decision regarding SORA, finding that imposing "the 2021 SORA on non-sexual offenders like defendant constitutes cruel or unusual punishment under the Michigan Constitution," but vacated this Court's opinion "insofar as its conclusions went beyond the consideration of non-sexual offenders and affirm its judgment that defendant and other offenders whose crimes lacked a sexual component are entitled to removal from the sex-offender registry." *Lymon*, 515 Mich at 190.

*People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). When a trial court makes an error of law, it "necessarily abuses its discretion." *Id*. This Court reviews whether a trial court followed an appellate court's remand directive de novo. *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019). In considering whether the trial court erred in the calculation of jail credit for defendant, this Court "review[s] de novo questions of law regarding statutory interpretation." *People v Filip*, 278 Mich App 635, 640; 754 NW2d 660 (2008) (footnote omitted).

## B. INACCURATE INFORMATION OR MISCONCEPTION OF LAW

Defendant contends that his sentences are invalid because they were predicated on inaccurate information—specifically, an alleged legal misconception that he was required to register as a sex offender—thereby necessitating resentencing.

Under the United States and Michigan Constitutions, defendants have a due-process right to be sentenced based on accurate information. US Const, Am XIV; Const 1963, art 1 § 17; *Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948); *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006). Accordingly, inaccurate information can invalidate a sentence, and courts may correct invalid sentences. *People v Poole*, 349 Mich App 594, 611-612; 28 NW3d 769 (2024), aff'd ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166813), citing *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). Additionally, a sentence based on a misconception of law is invalid. *Poole*, 349 Mich App at 611-612, citing *Miles*, 454 Mich at 96. "The remedy traditionally employed by this Court for an invalid sentence imposed on the basis of a misconception of the law is resentencing." *People v Thomas*, 223 Mich App 9, 12; 566 NW2d 13 (1997). The court's authority over a defendant "typically ends when a valid sentence is pronounced." *Poole*, 349 Mich App at 611, citing *Miles*, 454 Mich at 96.

Regarding the scope of remand, " '[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order.' " *Lampe*, 327 Mich App at 111-112, quoting *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012). Further, " ' the scope of the second appeal is limited by the scope of the remand.' " *People v Espie*, ___ Mich ___, ___; 15 NW3d 588 (2025)[2] quoting *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975). Consequently, this Court is limited to addressing the issue of defendant's removal from the SORA registry.

Defendant first posits that, when a sentence is vacated, all aspects of the case are subject to de novo review. However, defendant's sentences were not vacated; this Court affirmed his convictions and remanded solely for the limited purpose of removing defendant from the SORA. See *Lymon*, 342 Mich App at 52. Our Supreme Court vacated this Court's opinion only to the extent that it addressed issues beyond non-sexual offenders. *Lymon*, 515 Mich at 190. Defendant further maintains that a criminal sentence is an integrated whole, not a collection of discrete sanctions, and that the invalidation of the SORA registration requirement—purportedly a

---

[2]"Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

substantive component of the punishment—necessitates a complete resentencing. Defendant describes SORA registration as a punitive sanction of significant severity but fails to acknowledge that its removal results in a substantial reduction in his overall punishment. Notably, if a sentence is, as defendant suggests, a holistic and discretionary judgment in which each component is calibrated in light of overall sentencing objectives, it is unclear why the removal of a significant and severe component would require resentencing to potentially reduce the severity of the remaining sentences.

Defendant relies on *People v Jackson*, 487 Mich 783; 790 NW2d 340 (2010), to support his contention that he is entitled to resentencing because an element of the sentencing calculus was based on inaccurate information. In *Jackson*, our Supreme Court vacated the defendant's felonious assault convictions, which had been used as a factor in calculating his sentence for armed robbery, and held that resentencing was required because the sentence was predicated on inaccurate information. *Id*. at 801–802. Again, defendant's convictions were not vacated. See *Lymon*, 342 Mich App at 52–53. Defendant also cites examples from *People v Miles*, 454 Mich 90, but none are factually analogous. Significantly, defendant has not identified any factual inaccuracies underlying his custodial sentences, aside from the SORA registration requirement. Ultimately, defendant's argument is that the sentences were imposed based on a misconception of law, notwithstanding his focus on inaccurate information. In either event, the argument is unconvincing. Defendant's sentences were not predicated on a misconception of law; rather, they were imposed in accordance with the law as it existed at the time of sentencing. On appeal, this Court held that requiring defendant to register as a sex offender for 15 years constituted cruel or unusual punishment because it was unjustifiably disproportionate to the offense. *Lymon*, 342 Mich App at 88–89. Consequently, this Court remanded with instructions for the trial court to enter an order removing defendant from the sex offender registry. *Id*. at 89. Our Supreme Court likewise concluded that defendant and other offenders whose crimes lacked a sexual component were entitled to removal from the registry. *Lymon*, 515 Mich at 190. In so ruling, our Supreme Court emphasized that its holding was both narrow and workable, distinguishing nonsexual offenders entitled to removal from those who must remain on the registry. *Id*. at 190 n 24. Under these circumstances, it would have been improper for the trial court to grant relief beyond the removal of defendant from the SORA registry. See *Lampe*, 327 Mich App at 111–112.

Defendant's assertion that striking the SORA requirement from the judgment without resentencing contravenes our Supreme Court's opinion is similarly unavailing. The trial court's action is consistent with other appellate decisions and Supreme Court orders in which SORA registration was either independently vacated, see *People v Lee*, 489 Mich 289, 301; 803 NW2d 165 (2011), or reinstated, see *People v Galloway*, 503 Mich 881 (2018). In *People v Betts*, 507 Mich 527, 574; 968 NW2d 497 (2021), our Supreme Court vacated a conviction for failure to register as a sex offender because the 2011 SORA, as applied to pre-amendment offenses, constituted an unconstitutional ex post facto law. Following *Betts*, our Supreme Court vacated circuit court orders that denied relief or motions to correct invalid sentences, but only to the extent that removal from the SORA was involved. See *People v Werner*, 508 Mich 1033, 1033 (2022); *People v Smith*, 508 Mich 1033, 1033–1034 (2022). Collectively, these authorities support the conclusion that removal from SORA, without complete resentencing, is the appropriate remedy under the circumstances presented here.

Defendant further contends that the sentencing judge characterized the sentencing guidelines as "harsh" and imposed a sentence at the lowest end of the range, fully aware that SORA registration was required. However, the removal of the SORA requirement did not impact the minimum sentencing guidelines range, and the trial court properly declined to disturb defendant's otherwise valid sentences. The trial court correctly observed that it lacks authority to lower sentences or release inmates based solely on rehabilitation. This observation accords with the longstanding principle recognized by this Court and our Supreme Court that a trial court's authority over a defendant typically ceases once a valid sentence is imposed. *Poole*, 349 Mich App at 611, citing *Miles*, 454 Mich at 96.

Upon thorough review of the record and applicable legal authority, we conclude that there is no basis to disturb defendant's sentences on the ground of legal misconception. See *Poole*, 349 Mich App at 611–612, citing *Miles*, 454 Mich at 96. The sentencing court's determination was firmly grounded in the law as it was understood at the time of sentencing. *Francisco*, 474 Mich at 90–91. Defendant has not demonstrated that any material factual inaccuracies underpinned his sentences, offering only a generalized assertion that an alleged legal error resulted in factual error. This assertion is unsupported by the record.

In direct response to holdings by this Court and our Supreme Court that imposing SORA registration requirements on individuals convicted of nonsexual offenses constitutes cruel and unusual punishment under Michigan law and pursuant to a specific directive from this Court, the trial court issued an order removing defendant from the sex-offender registry. *Lymon*, 342 Mich App at 89. Thus, the unconstitutional component of defendant's sentence has been fully remedied through targeted relief, obviating the need for a plenary resentencing proceeding.

Moreover, the validity of the remainder of defendant's sentences is unassailable on the present record. The trial court acted well within its discretion in denying defendant's motion to "correct" his sentences. A full resentencing would have been not only unnecessary but would have exceeded the express scope of the remand order. See *Lampe*, 327 Mich App at 111–112.

## C. RESENTENCING AS EQUITABLE REMEDY

Defendant's argument that he is entitled to resentencing as an equitable remedy fails because an adequate legal remedy exists. Defendant relies on *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010), for the proposition that equitable relief is available only in the absence of an adequate legal remedy. As our Supreme Court explained, statutory remedies provided by the Legislature preclude the necessity for equitable intervention. *Id*. The Michigan Legislature established sentencing guidelines in 1998. *People v Babcock*, 469 Mich 247, 255; 666 NW2d 231 (2003). Defendant was sentenced under this statutory framework and received a sentence at the lower end of the applicable range. The existence of this statutory sentencing scheme constitutes an adequate legal remedy, foreclosing equitable relief. *Tkachik*, 487 Mich at 45.

Defendant also invokes the four factors for appropriate sentencing articulated in *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972), arguing that these considerations favor his continued release. The *Snow* factors—(1) offender reformation, (2) societal protection, (3) discipline, and (4) deterrence—were reaffirmed in *People v Boykin*, 510 Mich 171, 188; 987 NW2d 58 (2022) (citing *Snow*, 386 Mich at 592). However, both *Snow* and *Boykin* are materially distinguishable.

In *Snow*, the defendant challenged the legality of his entire sentence, while in *Boykin*, juvenile defendants convicted of first-degree murder received term-of-years sentences, and our Supreme Court mandated consideration of youth as a mitigating factor. *Boykin*, 510 Mich at 177-178. In those cases, the overall validity of the sentence was in question; here, only a distinct, independent aspect of defendant's sentence was deemed unconstitutional.

The remaining portion of defendant's original lawful sentence continues to fulfill the disciplinary objective of punishment, as well as the goal of deterrence. *Snow*, 386 Mich at 592. Although defendant may claim to be rehabilitated and no longer present a danger to society, the trial court accurately recognized that it lacked authority to modify a sentence or release an inmate on the basis of rehabilitation alone. Upon exhaustion of appellate remedies, the judiciary's involvement in determining sentence length ceases, and the Parole Board assumes exclusive responsibility for decisions regarding release. *In re McBrayer*, 511 Mich 403, 418; 999 NW2d 410 (2023). Thus, even if certain *Snow* factors weigh in defendant's favor, resentencing is unwarranted, and any dispute concerning the length of imprisonment must be addressed to the Parole Board. *In re McBrayer*, 511 Mich at 418.

Defendant's reliance on MCR 6.429(A) is similarly misplaced. That court rule solely empowers trial courts to correct an invalid sentence. Defendant has not demonstrated that his sentence was invalid, beyond the portion already corrected. Once a valid sentence is imposed, the trial court's jurisdiction terminates. See *People v Miles*, 454 Mich at 96. The trial court was thus correct in declining to disturb an otherwise valid sentence imposed by a predecessor judge.

In sum, the existence of an adequate legal remedy precludes equitable relief in this case. Even assuming, arguendo, that the trial court possessed equitable authority, the *Snow* factors do not compel resentencing. Furthermore, neither MCR 6.429(A) nor *Lymon*, 342 Mich App 46, supplies a tenable basis for granting resentencing as an equitable measure. Any ongoing concerns regarding the length of defendant's incarceration fall within the exclusive jurisdiction of the Parole Board. *In re McBrayer*, 511 Mich at 418. Accordingly, the trial court did not abuse its discretion when it denied defendant's request for resentencing.

## D. JAIL CREDIT

Defendant's next contention that he is entitled to additional jail credit for 1,532 days spent on a tether and under house arrest. The trial court denied defendant relief on this issue. In reaching this conclusion, the trial court relied on *People v Smith*, 195 Mich App 147; 489 NW2d 135 (1992), and *People v Reynolds*, 195 Mich App 182, 183-184; 489 NW2d 128 (1992). In *Smith*, 195 Mich App at 151, the defendant, as here, relied on *People v Granquist*, 183 Mich App 343; 454 NW2d 207 (1990), to argue that home confinement with electronic tethering is equivalent to incarceration. In *Granquist*, *id*. at 346, this Court concluded that a defendant's residence could constitute a "prison" under the prison escape statute, MCL 750.193, such that leaving in violation of furlough conditions constituted escape. However, the Court in *Granquist* expressly distinguished the use of an electronic tether from imprisonment. In *Smith*, 195 Mich App at 151-152, this Court clarified that the statutory definition of "prison" in the context of the escape statute was liberally construed, but declined to extend that interpretation to the context of jail credit, explaining:

Under no circumstances can we reasonably conclude that confinement in one's home or apartment is the equivalent of confinement "in jail." This is so even where, as here, the conditions of home confinement require the person confined to go directly to work, to return home immediately from work, and to be at home at all times unless approval is given by a probation officer. Home detention does not include the highly structured setting of a prison or jail. One cannot remain on the phone for extended periods, invite friends for extended visits, order a pizza, watch television during periods of one's own choosing, or have free access to the refrigerator in jail. [*Smith*, 195 Mich App at 152.]

Likewise, in *Reynolds*, 195 Mich App at 183, this Court held that a defendant is not entitled to credit for time spent on a tether. The Court explained, "The tether program is a restriction, not a confinement, and is not 'jail' as that term is commonly used and understood." *Id*. at 184.

The record reflects that defendant was released on appellate bond in November 2020, subject to stringent conditions including house arrest and continuous electronic tether monitoring. At the time of his release, the trial court expressly advised defendant that he would likely be required to continue serving his sentence, thereby providing clear notice that his liberty was conditional and not absolute. Subsequently, the bond conditions were modified to allow defendant to engage in employment.

Evidence submitted to the trial court, including a letter from defendant's current spouse, established that while on GPS tether, defendant maintained active employment, engaged in religious instruction and preaching, and participated meaningfully in his daughter's life and upbringing. Although defendant's physical movements were subject to restriction by the tether and house arrest conditions, the record demonstrates that he retained the ability to work, fulfill family responsibilities, and maintain community involvement. These facts underscore that, notwithstanding the constraints imposed by electronic monitoring and house arrest, defendant's circumstances did not rise to the level of incarceration or custodial confinement.

As this Court observed in *Smith*, 195 Mich App at 152, the nature of home confinement with electronic monitoring under such circumstances is not functionally nor legally equivalent to incarceration in a correctional facility. The ability to maintain employment, familial, and community ties significantly distinguishes electronic monitoring from the total deprivation of liberty attendant to jail or prison confinement.

In light of the foregoing, we conclude that defendant's period of house arrest and electronic tether monitoring while released on appellate bond does not qualify as time served in "jail" for purposes of sentence credit under MCL 769.11b. The conditions imposed, while restrictive, did not deprive defendant of the fundamental liberty interests that characterize incarceration in a correctional facility. Rather, defendant retained the ability to maintain employment, participate in family and community life, and otherwise exercise a degree of autonomy inconsistent with the notion of custodial confinement. The trial court therefore acted within its discretion in denying defendant's request for jail credit for the period spent on electronic monitoring and house arrest during appellate bond.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello